# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>HP INC.,<br><br>          Defendant. | CIVIL ACTION NO. 4:18-cv-700-ALM |

**DEFENDANT HP INC.'S MOTION TO DISMISS UNDER RULE 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    APL'S COMPLAINT AGAINST HP. ...................................................................2

III.   LEGAL STANDARD FOR A MOTION TO DISMISS UNDER FEDERAL
RULE 12(B)(6). ....................................................................................................4

IV.   THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF
INFRINGEMENT OF THE '655 AND '090 PATENTS. ...................................4

V.    THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF
INFRINGEMENT OF THE '049 AND '626 PATENTS. ...................................7

VI.   THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF WILLFUL
INFRINGEMENT. ................................................................................................9

      A.    APL Does Not Allege Legally Sufficient Pre-Suit Knowledge Of The
Asserted Patents. ......................................................................................9

      B.    APL Also Does Not Allege Any Conduct By HP Beyond "Typical"
Infringement. ..........................................................................................12

VII.  CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am., Inc. v. Sketchers USA, Inc.*,
   No. 3:16-cv-1400-SI, 2017 WL 2543811 (D. Or. June 12, 2017) .....................................10, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................1, 4, 12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................1, 4, 12

*Bush Seismic Techs. LLC v. Am. Gem Society, Inc.*,
   No. 2:14-cv-01809-JRG, 2016 WL 9115381 (E.D. Tex. Apr. 13, 2016) ...........................9, 10

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
   No. 11-cv-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) .......................................11

*Continental Circuits LLC v. Intel Corp.*,
   No. 16-cv-2026-PHX-DGC, 2017 WL 2651709 (D. Ariz. June 16, 2017) .....................12, 13

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
   No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) .........................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ...............................................................................................................13

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
   897 F.2d 508 (Fed. Cir. 1990) ................................................................................................9

*Halo Elecs., Inc. v. Pulse Electronics, Inc.*,
   136 S. Ct. 1923 (2016) .......................................................................................................9, 12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   134 S. Ct. 2111 (2014) .............................................................................................................7

*Opticurrent, LLC v. Power Integrations, Inc.*,
   No. 2:16-cv-00325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) ...........................9, 10

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
   No. 2:16-cv-1032-JRG, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017) ...............................10

*Soverain IP, LLC v. Microsoft Corp.*,
   No. 2:17-cv-00204-RWS-RSP, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018) ....................11

*Spherix Inc. v. Juniper Networks, Inc.*,
  No. 14-cv-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) .........................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................................11

*Varian Med. Sys., Inc. v. Elekta AB*,
  No. 15-cv-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016)...........................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ............................................................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................................................4, 11

Defendant HP Inc. respectfully moves to dismiss three sets of claims alleged by Plaintiff American Patents LLC ("APL"):  (1) APL's direct and indirect infringement claims as to United States Patent Nos. 7,373,655 ("the '655 patent") and 7,934,090 ("the '090 patent"); (2) APL's direct and indirect infringement claims as to United States Patent Nos. 6,004,049 ("the '049 patent") and 6,301,626 ("the '626 patent"); and (3) APL's claims for willful infringement as to all asserted patents.  For the reasons demonstrated below, these sets of claims do not state any plausible claim for relief.

## I.    INTRODUCTION

Three aspects of APL's complaint do not meet the pleading standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

First, APL's infringement claims as to the '655 and '090 patents are directed to products that HP does not make, use, sell, offer for sale, or import.  APL alleges infringement based on a nebulous combination of HP's Chromebook laptops, the Google Chromecast device and Android devices and/or operating system.  Yet APL's own allegations confirm that Chromecast is a Google product and the accused HP Chromebook laptops do not use the Android operating system.  APL cannot plausibly allege infringement against HP based on a product (Chromecast) that HP does not sell and an operating system (Android) that HP does not use.

Second, APL's infringement claims as to the '049 and '626 patents provide no notice as to whether HP makes, uses, sells, offers for sale or imports the accused product.  Rather, APL alleges infringement based on a screenshot of an unbranded "Chromebook" laptop from a third-party video posted on YouTube.  But HP is one of many companies that sells Chromebook laptops, as demonstrated by APL's own allegations against other defendants.  And APL does not allege that the laptop depicted in the third-party video screenshot is an HP laptop.  Absent some explanation, the screenshot does not provide notice of how HP Chromebook laptops allegedly

practice the '049 and '626 patents.  APL cannot plausibly allege infringement based on an unbranded laptop, a generic screenshot of a third-party video and infringement allegations that simply parrot claim limitations.

Third, APL's willful infringement claims do not plausibly allege that HP had pre-suit knowledge of the asserted patents or that HP engaged in "misconduct beyond typical infringement."  On the contrary, APL's willful infringement allegations are largely based on the theory that HP learned about the asserted patents when the complaint was served and continued to sell the accused products.  For two of the patents, APL alleges that employees at a different company, Compaq Computer, learned about one of APL's patents during prosecution at the Patent Office of an unrelated patent application.  These allegations cannot by themselves plausibly support a willful infringement claim.  APL's conclusory characterization of HP's infringement as "objectively reckless" or "willful" is not enough to sustain these claims.

## II.   APL'S COMPLAINT AGAINST HP.

APL's October 4, 2018 complaint against HP alleges that HP manufactures and sells Windows OS and Chrome OS laptops.  Dkt. No. 1, Complaint ¶ 12 ("Windows 10 Home 64"); ¶ 50 ("Chrome OS").

In Counts IV and V, APL accuses HP of infringing the '655 and '090 patents, respectively, by "making, having made, using, importing, providing, supplying, distributing, selling or offering for sale systems utilizing a method."  *Id.* at ¶ 52; *see also id.* at ¶ 64 ("…a method for providing access to a network resource").  As to those patents, APL alleges that "[t]he methods practiced by the accused products include receiving, at the network element, a request from a user to connect to the network element."  *Id.* at ¶ 54; *see also id.* at ¶ 65 ("The methods practiced by the accused products include receiving, at a network node that is pre-authorized to access the network resource, a request to allow a first user to assume an identity of

the network node, the network node that is pre-authorized having a plurality of access privileges associated therewith.").  In support, APL cites a Google Support page for Google's Chromecast device (https://support.google.com/chromecast/answer/2998456?co=GENIE. Platform%3DAndroid&oco=1), which states that Google "no longer support[s] Chromecast setup on a computer.  To set up your Chromecast, please use a mobile device."  Declaration of Sean Cunningham, Ex. 1.  Nowhere does APL allege that HP makes, uses, sells, offers for sale, or imports the Google Chromecast devices, nor does APL allege that the Google Chromecast devices can be (or are) used with the HP Chromebook computers mentioned in Counts IV and V.

In Counts VI and VII, APL accuses HP of infringing the '049 and '626 patents, respectively, by "making, having made, using, importing, providing, supplying, distributing, selling or offering for sale systems utilizing a method of configuring an input device for a data processing system, the input device having a set of display elements capable of displaying symbols."  Complaint ¶¶ 75, 91.  As to those patents, APL alleges that "[t]he methods practiced by the accused products include selecting an input device."  *Id*. at ¶¶ 76, 92.  In support of these allegations, APL pastes in a single screenshot from a third-party video posted to YouTube:



*Id.* at ¶¶ 76, 80, 92, 95.  APL never identifies the brand of Chromebook depicted in the third-party screenshot (*i.e.*, Asus, Acer, Samsung, Lenovo, Dell, Toshiba, Google, or HP).  Nowhere else in its complaint does APL allege that HP makes, uses, sells, offers for sale, or imports the Chromebook laptop depicted in that screenshot.

For its claims of willful infringement, APL does not allege pre-suit knowledge for five of the asserted patents.  *See id.* at ¶¶ 21, 33, 45, 57, 68.  For the remaining two asserted patents (the '626 and '049 patents), APL bases its pre-suit knowledge allegation on a citation to the '626 patent during the prosecution of an abandoned application assigned to Compaq Computer.  *Id.* at ¶¶ 84, 100.  APL further alleges that HP "has a policy or practice of not reviewing the patents of others" and that HP's alleged infringement "is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of [APL's] rights under the patents."  *Id.* at ¶¶ 106-108.

## III.  LEGAL STANDARD FOR A MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  This means a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## IV.  THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF INFRINGEMENT OF THE '655 AND '090 PATENTS.

The Court should dismiss Counts IV and V of APL's complaint because they do not allege plausible claims of infringement of the '655 and '090 patents, respectively.  On the contrary, APL's allegations are directed to a device, Google Chromecast, that HP does not make

or sell and an operating system, Android, that HP does not use.  In Counts IV and V, APL confirms that the "Chromecast devices" are made and sold by Google by citing the "store.google.com" website for purchasing Google Chromecast devices:



Complaint ¶¶ 55, 66 (citing "Source: https://store.google.com/product/chromecast_2015").

Notably, APL's complaint does not allege that HP makes or sells Google Chromecast devices, because it does not.  APL further alleges infringement in Counts IV and V based on references to a Google Support website directing a user to "Open the Google Home app by tapping the app icon on your Android device" and "Tap **Get Started** or find the device card > **Set up**":

> 4. Open the Google Home app by tapping the app icon on your Android device.
>
> 5. Tap **Get Started** or find the device card  >  **Set up.**
>
> 6. **Confirm Google Account:** Choose which Google Account that you want to link to Chromecast. You can also add a different account if you don't see the listed account that you want to use. Tap **OK.**
>
> 7. **Permissions:**
>
>     a. **Location services** – If you don't have Location services on, tap **Go to settings**  >  find the Google Home app  >  turn on Location services  >  go back to the Google Home app.
>
>     b. **Location access** – Location access is needed to find nearby devices that need to be set up Tap **OK.**
>
> 8. **Scanning for Chromecast devices:** The Google Home app scans for nearby devices that are plugged in and ready to set up.
>
>     a. If you only have one device that needs to be set up, tap **Next.**
>
>     b. If the Google Home app finds a list of devices, tap the device that you want to set up  >  **Next.**
>
> 9. **Found devices:**
>
>     a. If one device is found, tap **Next.**
>
>     b. If multiple devices are found, choose the device that you want to set up  >  **Next.**
>
>     c. If you don't see your device, tap **Don't see your device.**
>
> 10. **Connecting to your new device:** The app will now connect your phone to your new Chromecast so that you can configure it.
>
> 11. **Making a connection:** We'll display a code on your TV to make sure that you're setting up the right device.
>
>     a. If you see a code on your TV,  tap **Yes.**
>
>     b. If you didn't see a code, move closer to the Chromecast device and tap **Try again**  >  **Scan for devices.**

*Id.* at ¶¶ 54, 65 (red underlining added by APL).  APL does not allege that the "HP Chromebook family of products" mentioned in Counts IV and V are "Android devices" (they are not), or that they have a "Google Home app" (they do not).  On the contrary, APL's complaint concedes the HP Chromebooks use "Chrome OS," a different operating system than Android.  *See id.* at ¶ 50. Moreover, that same Google Support website confirms that the Google Chromecast devices cannot be used with HP's Chromebook computers:  "We no longer support Chromecast setup on a computer.  To set up your Chromecast, please use a mobile device." *Id.*

> # Set up your Chromecast device
>
> The Google Home app will walk you through the steps to set up your Chromecast device. This includes Chromecast and Chromecast Ultra.
>
> If you've already set up your Chromecast on a mobile device, you don't need to set it up again on a different mobile device *if all devices are on the same Wi-Fi network.*
>
> >     We no longer support Chromecast setup on a computer. To set up your Chromecast, please use a mobile device.

Declaration of Sean Cunningham, Ex. 1 (emphasis added).

APL's own allegations therefore confirm that:  (1) the Chromecast device is a Google product, not an HP product; (2) the "HP Chromebook family of products" does not use the Android operating system, but rather uses the Chrome operating system; and (3) the Google Chromecast product cannot be used with HP Chromebook computers.  Because APL cannot make out a plausible claim of direct infringement <u>against HP</u> based on a third-party product (Chromecast) and a third-party operating system (Android), the Court should dismiss Counts IV and V of the complaint, and APL's indirect infringement allegations for those patents.[1]

## V.  THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF INFRINGEMENT OF THE '049 AND '626 PATENTS.

The Court should dismiss Counts VI and VII of APL's complaint because they provide no notice as to whether HP makes, uses, sells, offers for sale or imports the products accused of infringing the '049 and '626 patents.  On the contrary, APL's allegations are directed to an unbranded "Chromebook" laptop depicted in a third-party video posted to YouTube.  *See* Complaint ¶¶ 76, 80, 92, 95.  Yet APL never alleges in Counts VI or VII (or elsewhere) that the unbranded Chromebook depicted in that third-party video is an HP laptop, as opposed to another company's Chromebook:

---

[1] APL cannot plausibly allege indirect infringement without a plausible allegation of direct infringement.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2118 (2014).



*Id.* at ¶¶ 76, 80, 92, 95.

This single screenshot pasted into the complaint adds no substance or support to the conclusory allegations contained in the boilerplate text.  *See, e.g.*, *id.* at ¶¶ 76, 80, 92, 95.  The screenshot is presented without explanation, with nothing to link any features or objects depicted in the screenshot to the limitations of the patent claims.  Absent explanation, the screenshot does not provide notice of which "input device layout" is "not displayed," what constitutes "determining [the] location" of the input device layout, what input device layouts are allegedly being downloaded, and from what "network" and "server" the input device layouts are allegedly downloaded.  *See, e.g.*, *id.* at ¶¶ 76-83, 92-99.  The screenshot thus does not add sufficient factual matter to save the claims from dismissal.  Because APL cannot make out a plausible claim of infringement against HP based on an unbranded product depicted in a generic third-party video, the Court should dismiss Counts VI and VII of the complaint and APL's indirect infringement allegations for those patents.

## VI.    THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF WILLFUL INFRINGEMENT.

For two independent reasons, APL's complaint fails to allege plausible claims of willful infringement against HP for any of the asserted patents:  (1) APL does not plausibly allege HP had the requisite pre-suit knowledge of any of the asserted patents; and (2) APL does not plausibly allege that HP's conduct was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016).

### A.    APL Does Not Allege Legally Sufficient Pre-Suit Knowledge Of The Asserted Patents.

APL's willful infringement claims are deficient because APL does not allege legally sufficient pre-suit knowledge of the asserted patents.  Under settled Federal Circuit law, "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990); *see also Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-00325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016) ("pre-suit knowledge of the asserted patent is generally required to maintain a claim of willfulness").

Here, for five of the seven asserted patents,[2] APL concedes that HP had no pre-suit knowledge, alleging only that "HP has had knowledge of the [asserted] patent at least as of the date when it was notified of the filing of this action."  *See* Complaint ¶¶ 21, 33, 45, 57, 68.  This concession is fatal to APL's willful infringement claims as to those five patents, because allegations of post-suit knowledge are legally insufficient.  *Opticurrent*, 2016 WL 9275395, at *2; *Bush Seismic Techs. LLC v. Am. Gem Society, Inc.*, No. 2:14-cv-01809-JRG, 2016 WL

---

[2] Those patents are United States Patent Nos. 7,088,782 (Count I); 7,310,304 (Count II); 7,706,458 (Count III); 7,373,655 (Count IV); and 7,934,090 (Count V).

9115381, at *3 (E.D. Tex. Apr. 13, 2016); *Adidas Am., Inc. v. Sketchers USA, Inc.*, No. 3:16-cv-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) ("If the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement, there is no basis upon which the plaintiff can plead that the defendant's infringement was willful.").[3]

For example, in *Bush Seismic Techs.*, the Court found that willful infringement claims "grounded exclusively in conduct occurring as of and after the filing of its complaint" had not been sufficiently pleaded and could not survive a motion to dismiss.  2016 WL 9115381, at *3. At the time of filing, plaintiffs are "required to have a good faith basis for alleging willful [] infringement." *Id.*  As the district court noted, a plaintiff bringing willfulness claims for post-suit conduct "could not have had a good faith basis to allege willful and induced infringement based on post-suit conduct that had not yet occurred." *Id.*  Because APL cannot plausibly allege HP's pre-suit knowledge for five of the asserted patents, its claims of willful infringement for those patents should be dismissed.

For the remaining two asserted patents (U.S. Patent Nos. 6,004,049 and 6,301,626), APL merely alleges that in February 2005, the '626 patent "was cited by the examiner during the prosecution of U.S. Patent Application No. 10/109,589, which was assigned to Compaq Information Technologies Group, L.P., a predecessor in interest to HP."  Complaint ¶¶ 84, 100. APL does not allege that HP itself had any direct knowledge of the '049 or '626 patents in 2005,

---

[3] Courts holding that post-suit knowledge of an asserted patent is sufficient for willful infringement allegations have never squared those conclusions with the post-*Halo* decision in *Opticurrent*, or others that distinguished the pre-suit knowledge pleading requirements for willful infringement (required) and indirect infringement (not required).  *See, e.g.*, *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG, 2017 WL 8727249, at *2, 6 (E.D. Tex. Sept. 22, 2017).  The Supreme Court's requirement that willful infringement is reserved for "egregious cases of misconduct beyond typical infringement" is an illogical excuse for permitting willful infringement allegations based on the typical claim that the defendant continued selling the accused products after being sued.

nor does APL allege that HP somehow obtained indirect knowledge of those patents as a result of its acquisition of Compaq Computer Corp.  Nor can APL plausibly do so, as the '626 patent was one of more than 30 references cited by the examiner during the prosecution of an abandoned application approximately eight years before the release of HP's Chromebooks. Declaration of Sean Cunningham, Ex. 2.[4]  APL does not allege that the '049 patent was ever cited by HP or Compaq and offers no plausible basis for alleging that the examiner's citation to the '626 patent would have provided knowledge of the '049 patent.

Moreover, APL does not allege that anyone at Compaq or HP ever argued patentability over either asserted patent, or did anything else reflecting either company's knowledge of the asserted patents.  *See Chalumeau Power Sys. LLC v. Alcatel-Lucent,* No. 11-cv-1175-RGA, 2012 WL 6968938, at \*1 (D. Del. July 18, 2012) (citation of asserted patent by examiner did not provide sufficient knowledge of patent for willful infringement claim); *Spherix Inc. v. Juniper Networks, Inc.*, No. 14-cv-578-SLR, 2015 WL 1517508, at \*3 (D. Del. Mar. 31, 2015) (same); *see also Soverain IP, LLC v. Microsoft Corp.*, No. 2:17-cv-00204-RWS-RSP, 2018 WL 1465792, at \*2 (E.D. Tex. Mar. 26, 2018) ("Here, however, Soverain alleges AT&T (not an examiner) cited to one of the asserted patents in eleven of its applications.  That gives rise to a more-than-plausible inference that AT&T had sufficient knowledge of the asserted patent given that AT&T decided the patent was material to the prosecution of its own applications.").

---

[4] When reviewing a motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted).  Here, the Court should take judicial notice of publicly available prosecution documents for U.S. Patent Application No. 10/109,589, which APL's complaint attempts to incorporate by reference.  *See* Complaint ¶¶ 84, 100.

Therefore, the allegations in paragraphs 84 and 100 do not and cannot support APL's claims of willful infringement as to the '049 and '626 patents.

> **B.     APL Also Does Not Allege Any Conduct By HP Beyond "Typical" Infringement.**

APL's willful infringement claims also are legally deficient because APL does not allege facts supporting the conclusion that HP's infringement qualifies as an "egregious case[] of misconduct beyond typical infringement." *Halo*, 136 S. Ct. at 1935.  APL primarily appears to base its allegations on HP's continued sales of products while challenging APL's claims in this litigation (*see* Complaint ¶¶ 107, 108; *see also id.* at ¶¶ 103-104), which happens in nearly every patent case.  The "typical" conduct of continuing to sell the accused products is not enough to sustain a willful infringement claim as a matter of law.  *See Varian Med. Sys., Inc. v. Elekta AB*, No. 15-cv-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016) ("[T]he Complaint does not sufficiently articulate how the U.S. Defendants' making, using or offering for sale of the Gamma Knife Icon actually amounted to an egregious case of infringement of the patent.").

APL's remaining allegations do not save its willful infringement claims from dismissal.  APL alleges that "HP has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' rights under the patents."  Complaint ¶ 106.  But APL cites no facts to support this conspiracy theory, which is precisely the type of implausible allegation the Supreme Court rejected in *Twombly* and *Iqbal*.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *see also Continental Circuits LLC v. Intel Corp.*, No. 16-cv-2026-PHX-DGC, 2017 WL 2651709, at *7 (D. Ariz. June 16, 2017) ("Courts … have universally—either in word or deed—required plaintiffs to plead facts showing willfulness.").  Tellingly, APL makes identical accusations against the defendants named in APL's other complaints filed in this District.  And APL's

attempt to conflate the "willful blindness" standard for inducement under *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 769 (2011) with the willful infringement standard is unsupported.  *See adidas Am., Inc.*, 2017 WL 2543811, at *5 ("Plaintiffs also argue that allegations in the Complaint that Defendant was 'willfully blind' to the patents-in-suit is independently sufficient to plead knowledge of the patents-in-suit for purposes of alleging willful infringement. … Plaintiffs cite no authority to support the contention that it does.").

APL's remaining allegations that HP's infringement was "objectively reckless" and "willful, intentional, deliberate, and/or in conscious disregard of American Patents' rights under the patents" are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that are insufficient to overcome a motion to dismiss. *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015).  In *Iqbal*, for example, the Supreme Court concluded that allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement" were "not entitled to the assumption of truth" because they were "nothing more than a 'formulaic recitation of the elements'" of the alleged claim.  *Iqbal*, 556 U.S. at 680-81.  Here, APL's conclusory characterization of HP's conduct as "objectively reckless" or "willful" is similarly "not entitled to the assumption of truth" under *Iqbal*.  *See also Continental Circuits*, 2017 WL 2651709, at *8 (an "amended complaint [that] add[ed] the word 'egregious' to its allegations that Defendants' 'infringement of the Patents-in-Suit has been and continues to be egregious, willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, and/or flagrant,' … is merely a conclusion, which is not sufficient.").

## VII.    CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court grant its motion to dismiss with prejudice (1) APL's direct and indirect infringement claims as to the '655 and '090 patents (Counts IV and V), (2) APL's direct and indirect infringement claims as to the '049 and '626 patents (Counts VI and VII), and (3) APL's willful infringement claims as to all asserted patents.

Dated:  December 21, 2018

By:  */s/ Clyde M. Siebman*

Clyde M. Siebman
TX Bar No. 18341600
Elizabeth S. Forrest
TX Bar No. 24086207
Siebman Forrest Burg & Smith, LLP
300 N Travis St.
Sherman, TX 75090
Phone: 903-870-0070
Fax: 903-870-0066
clydesiebman@siebman.com
elizabethforrest@siebman.com

DLA PIPER LLP (US)
Sean C. Cunningham (*pro hac vice* pending)
sean.cunningham@dlapiper.com
Erin P. Gibson (*pro hac vice* pending)
erin.gibson@dlapiper.com
Tiffany Miller (*pro hac vice* pending)
jacob_y.miller@dlapiper.com
Jacob Anderson (*pro hac vice* pending)
jacob.anderson@dlapiper.com
401 B Street, Suite 1700
San Diego, California 92101-4297
Phone:  619.699.2700
Fax: 619.699.2701

ATTORNEYS FOR DEFENDANT HP INC.

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 21, 2018.

/s/ Clyde M. Siebman