## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>HP INC.,<br><br>  Defendant. | CIVIL ACTION NO. 4:18-cv-700-ALM<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## AMERICAN PATENTS' OPPOSITION TO HP'S MOTION TO DISMISS UNDER
## <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6) ..................1

III. AMERICAN PATENTS SUFFICIENTLY PLEADED DIRECT INFRINGEMENT ...........2

IV. AMERICAN PATENTS SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT .......6

V. AMERICAN PATENTS SUFFICIENTLY PLEADED WILLFULNESS.............................7

    A. American Patents Plausibly Alleged That HP Intentionally Infringed ............................ 7

    B. Egregious Conduct Is Not Required to State a Claim for Willfulness............................ 8

    C. Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness........................... 9

    D. Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here ................ 11

        1. American Patents Adequately Alleged HP's Pre-Suit Knowledge of All Patents Based on Willful Blindness...................................................................................... 11

        2. American Patents Adequately Alleged HP's Actual Pre-Suit Knowledge of the '049 Patent and the '626 Patent ........................................................................................ 12

VI. IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED..................................15

VII. CONCLUSION ...........................................................................................................15

I.      INTRODUCTION

American Patents' original complaint in this case alleged that HP infringed seven patents.[1] HP has moved to dismiss the complaint for failure to state a claim of direct and indirect infringement as to four of those patents, and for failure to state a claim of willful infringement as to all asserted patents.

HP's challenge to American Patents' direct and indirect infringement allegations should be rejected. American Patents alleged infringement of specific claims by specific HP products, providing cites to HP websites showing accused products. American Patents alleged that HP's products meet each element of specific claims. And American Patents identified certain features of the accused instrumentalities involved in the infringement. These allegations provide fair notice of American Patents' claims against HP and the grounds on which they rest, thereby putting HP on notice as to what it must defend.

HP's challenge to American Patents' willfulness allegations should also be rejected. Contrary to HP's arguments, neither egregious conduct nor pre-suit knowledge of the asserted patents need be alleged to state a claim for willfulness.

II.     LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6)

A motion to dismiss under Rule 12(b)(6) is a "purely procedural question," so the Federal Circuit applies the law of the regional circuit. *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009). In the Fifth Circuit, such motions "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

---

[1] The seven asserted patents are U.S. Patent Nos. 7,088,782 ("the '782 Patent"), 7,310,304 ("the '304 Patent"), 7,706,458 ("the '458 Patent"), 7,373,655 ("the '655 Patent"), 7,934,090 ("the '090 Patent"), 6,004,049 ("the '049 Patent"), and 6,301,626 ("the '626 Patent").

1

Rule 8(a) requires only a "short plain statement of the claim" sufficient to give the defendant fair notice of what act is being accused. Fed. R. Civ. P. 8(a). In deciding a motion to dismiss for failure to state a claim, the Court must accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016). Despite the facial simplicity of these requirements, the Supreme Court explained in *Bell Atl. Corp. v. Twombly* that the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The plausibility standard, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In general, the standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 545.

A complaint for direct patent infringement "must explicitly plead facts to plausibly support the assertion that a defendant 'without authority, makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2016 WL 7042236, at *2 (E.D. Tex. May 13, 2016).

### III. AMERICAN PATENTS SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

American Patents has met the *Twombly* and *Iqbal* pleading requirements to support a plausible claim of direct infringement. While this Court has not announced "a floor for the direct infringement standard," it has held that the pleading requirement is met where the plaintiff: (1) alleges a specific product infringes a specific claim; (2) alleges the product meets all the elements of a specific claim; and (3) incorporates by reference a website illustrating the accused product. *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017).

HP contends that American Patents has not plausibly alleged direct infringement of the '655 patent, the '090 patent, the '049 patent, and the '626 patent. But American Patents' allegations against HP for these four patents go well beyond what this Court found sufficient in *Dynocom*. For instance, as to each of the four patents, American Patents has:

(a) alleged that specific HP products infringe specific claims (*see, e.g.*, Complaint at ¶¶ 50, 51, 62, 63 (identifying the HP Chromebook – 11-v010nr as a specific product that infringes Claim 5 of the '655 Patent and Claim 1 of the '090 Patent); and ¶¶ 73, 74, 89, 90 (identifying the HP Chromebook – 14-ca060nr as a specific product that infringes Claims 1 and 10 of the '049 Patent and Claims 1 and 8 of the '626 Patent));

(b) alleged that those HP products meet each element of specific claims (*see, e.g.*, Complaint at ¶¶ 52-56, 64-67 (allegations regarding each element of Claim 5 of the '655 Patent and Claim 1 of the '090 Patent); and ¶¶ 75-83, 91-99 (allegations regarding each element of Claims 1 and 10 of the '049 Patent and Claims 1 and 8 of the '626 Patent));

(c) incorporated by reference a website illustrating the accused HP products (*see, e.g.*, Complaint at ¶¶ 50, 62, 73, and 89 (referencing, as sources, https://store.hp.com/app/pdp/hp-chromebook---11-v010nr-%28energy-star%29 and https://store.hp.com/us/en/pdp/hp-chromebook-14-ca060nr));

(d) included screenshots to help identify the accused products involved in HP's infringement (*see, e.g.*, Complaint at ¶¶ 50, 62, 73, and 89 (screenshots of the HP Chromebook – 11-v010nr and HP Chromebook – 14-ca060nr products and of materials describing them)); and

(e) identified features of the accused products involved in HP's infringement (*see, e.g.*, Complaint at ¶¶ 50, 62, 73, 89, and 105 (identifying "allow[ing] for initiation and/or control of Internet streamed content" and "predictive text and other advanced keyboard layout capabilities" of the accused products involved in the infringement)).

As the preceding paragraphs show, American Patents has more than satisfied Rule 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). American Patents is only required to present "enough fact[s] to raise a reasonable expectation that discovery will reveal" that HP is liable for patent infringement. *See Twombly*, 550 U.S. at 556; *see also Disc Disease Solutions Inc. v. VGH*

3

*Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal of complaint where allegations "specifically identified the three accused products" and alleged that the products "meet 'each and every element of at least one claim'"); *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 1310007 at *2 (E.D. Tex. Feb. 14, 2018) ("this Court has previously recognized that an allegation a specific accused product or system infringes a patent is sufficient to meet the pleading requirements of the rules, and a plaintiff need not allege what specific components, features, or capabilities infringe"), *adopted*, 2018 WL 1306615 (E.D. Tex. Mar. 13, 2018).

HP appears to argue that the complaint's allegations are insufficient because HP believes it does not infringe—a belief that is, of course, irrelevant at this stage.  For example, HP argues that the Complaint's allegations regarding the '655 Patent and the '090 Patent are insufficient because they are supposedly "directed to a device, Google Chromecast, that HP does not make or sell and an operating system, Android, that HP does not use." (Mtn. at 4-6). HP is simply incorrect because HP *does* make and sell the devices that American Patents *did* accuse, HP Chromebooks. And those HP Chromebooks run on the Chrome OS operating system, which is specifically designed to work with and stream to Google Chromecast devices (or televisions with built-in Chromecast) in a manner that infringes Claim 5 of the '655 Patent and Claim 1 of the '090 Patent.

HP also refers to one of the screenshots in the Complaint—a screenshot from a Google Support website for Chromecast—arguing that the website requires use of an Android device in order to use a Chromecast device and arguing that the website "confirms that the Google Chromecast devices cannot be used with HP's Chromebook computers[.]" (Mtn. at 5, 6). HP's arguments are both irrelevant and incorrect. These arguments are irrelevant because this

4

screenshot serves a specific purpose: showing how mobile devices (including HP Chromebooks) can (and do) interact with Chromecast devices. These arguments are incorrect because Chromecast devices can be used not only with[2] mobile devices such as cellular phones (whether using Android or iOS), tablets, or Chromebooks (which, by name, use Chrome OS), but also with computer devices such as desktops and laptops (whether using Windows, macOS, or Linux).[3]

As for the '049 Patent and the '626 Patent, HP argues, incorrectly, that "APL's allegations are directed to an unbranded 'Chromebook' laptop depicted in a third-party video posted to YouTube" and that "APL never alleges in Counts VI or VII (or elsewhere) that the unbranded Chromebook depicted in that third-party video is an HP laptop, as opposed to another company's Chromebook." (Mtn. at 7-8). But American Patents *did not* accuse an "unbranded Chromebook laptop" of infringement in this case. American Patents specifically accused the HP Chromebook family of products, including at least the HP Chromebook – 14-ca060nr product, of infringing the '049 Patent and the '626 Patent. The screenshot from the YouTube video in the Complaint serves the specific purpose of showing that Chromebooks (including HP Chromebooks), because of their use of Chrome OS, have an accessibility feature of an on-screen keyboard with predictive text functions. Indeed, American Patents alleged that the HP

---

[2] The website that HP points to refers to setting up or configuring a Chromecast device with a "mobile device" instead of a "computer." Regardless of what devices that web page intends to be covered by each of those terms, the site cannot plausibly be interpreted to say that a Chromecast device cannot be used to stream from a Chromebook. *See, e.g.,* "Use Chromecast With Your Chromebook" instructions, *available at* https://support.google.com/chromebook/answer/3289520?hl=en.

[3] On the next page, HP makes the plainly false assertion that "APL's own allegations therefore confirm that: … the Google Chromecast product cannot be used with HP Chromebook computers." (Mtn. at 7). But as noted above, in addition to HP's Chromebook devices having the ability to *set up* a Chromecast device, HP's Chromebook devices can certainly be *used with* Google Chromecast devices. *See supra*, n. 2.

Chromebook family of products, such as the HP Chromebook – 14-ca060nr, have "predictive text and other advanced keyboard layout capabilities." (Dkt. 1 at ¶¶ 73, 89).

HP also argues that the screenshot "does not add sufficient factual matter to save the claims from dismissal," stating that "[a]bsent explanation, the screenshot does not provide notice of which "input device layout" is "not displayed," what constitutes "determining [the] location" of the input device layout, what input device layouts are allegedly being downloaded, and from what "network" and "server" the input device layouts are allegedly downloaded. *See, e.g., id.* at ¶¶ 76-83, 92-99." (Mtn. at 8). HP cites no authority, however, to support its contention that additional, specific elaboration of this screenshot is required. As noted above, American Patents has presented sufficient facts, and more, to plausibly support its claim for infringement. HP's contrary arguments are nothing more than attempts to force American Patents to prove its case on the pleadings. *Marking Object Virtualization Intelligence, LLC v. Hitachi Ltd.*, No. 2:16-cv-01055-JRG, Dkt. 88, slip op. at 5 (E.D. Tex. Sep. 25, 2017) ("At this stage in the case, the plaintiff is not required to provide an exposition of his legal argument.") (internal quotes omitted); *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2016 WL 7042236, at *3 (E.D. Tex. May 13, 2016) (concluding that the identification by name of accused products, description of the accused functionality within the products, and the accused functionality were sufficient to support a reasonable inference the defendant was liable for direct infringement of the asserted claims, and that "[r]equiring more would improperly and unfairly elevate the plausibility standard to a probability standard").

**IV.     AMERICAN PATENTS SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT**

American Patents has also plausibly alleged indirect infringement. HP's only challenge regarding indirect infringement is contained in a footnote to its direct infringement arguments—a

6

tacked-on claim that "APL cannot plausibly allege indirect infringement without a plausible allegation of direct infringement." (*See* Mtn. at 7 n.1, 8). But HP has offered no legal or logical support for this proposition. (For example, whether HP directly infringes a patent is an analytically distinct question from whether HP induces its customers to infringe that patent.) Instead, HP offers only a lone citation to *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2118 (2014)." (Mtn. at 7 n.1). But HP's proposition does not follow from *Limelight Networks*. At best for HP, the cited portion of *Limelight Networks* stands for the unremarkable proposition that a company "cannot be liable for inducing infringement that never came to pass." 134 S. Ct. at 2118. But that case says *nothing* about pleading standards or plausible allegations of indirect infringement, or how those standards might relate to whether a separate claim for direct infringement was properly made.

### V. AMERICAN PATENTS SUFFICIENTLY PLEADED WILLFULNESS

HP argues that American Patents' allegations regarding willfulness should be dismissed because they supposedly do not "plausibly allege HP had the requisite pre-suit knowledge of any of the asserted patents" or "plausibly allege that HP's conduct was 'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate.'" (Mtn. at 9). HP's arguments are wrong because neither egregious conduct nor pre-suit knowledge need be alleged to state a claim for willfulness. And even if pre-suit knowledge were required, American Patents has adequately alleged such knowledge.

#### A. American Patents Plausibly Alleged That HP Intentionally Infringed

American Patents plausibly alleged willful infringement by HP. Willfulness requires proof that the defendant "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement." *Arctic Cat Inc. v. Bombardier Recreational Products*

*Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (rejecting challenge to jury instruction on willfulness). The Complaint alleged that HP had knowledge of the patents, that HP's customers are directly infringing, and that HP has encouraged (and continues to encourage) them to infringe. (Dkt. 1 at ¶ 4, 5, 21, 33, 45, 57, 68, 84, 100, 103-108). These allegations are sufficient to state a claim for willful infringement at the pleading stage. *See, e.g., Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp.3d 928, 939 (E.D. Tex. 2016) (Bryson, J., by designation) (rejecting argument that plaintiff failed to plead facts showing that defendants' "actions constituted an unjustifiably high risk of infringement" because plaintiff "has pleaded knowledge of the patent, that defendants' customers are infringing, and that the defendants encouraged this infringement").

        B.    <u>Egregious Conduct Is Not Required to State a Claim for Willfulness</u>

HP nevertheless says that the Complaint should be dismissed because it does not plausibly allege facts supporting a conclusion that HP's conduct was "egregious." (Mtn. at 12). But whether infringing conduct was sufficiently "egregious" is not an element of willful infringement at all. Instead, "egregiousness" is for the court to consider in exercising its discretion to enhance damages after the jury's finding of willfulness. *See Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, 2018 WL 2149736, at *8 (E.D. Tex. 2018) ("the jury must decide whether the infringement was *intentional*, and then the court must decide whether the intentional conduct was *egregious* enough to justify enhanced damages") (emphasis added).

*Halo* did state that enhanced damages awards are meant to be a "sanction for egregious infringement behavior." 136 S. Ct. at 1932. But that does not mean egregiousness is an element of willful infringement. Indeed, "*Halo* emphasized that subjective willfulness alone—i.e., proof that the defendant acted despite a risk of infringement that was either known or so obvious that it

8

should have been known to the accused infringer" is sufficient to establish willfulness and allow the court to consider enhancing damages. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (internal quotes omitted). For that reason, in *Ericsson* this Court rejected a defendant's challenge to the jury's willfulness verdict specifically because the defendant's "assumption that a jury's willfulness finding cannot stand without egregious or shocking infringement behavior is inconsistent with the Federal Circuit's decision in *Artic Cat*." *Ericsson*, 2018 WL 2149736, at *9.[4]

    C.    <u>Pre-Suit Knowledge Is Not Required to State a Claim for Willfulness</u>

HP also argues that American Patents' willful infringement allegation is flawed because, according to HP, willful infringement must be based on pre-suit knowledge of the patents. (Mtn. at 9). That is not the law: "there is nothing in *Halo* suggesting that pre-suit knowledge is required for willfulness. . . . Culpability can arise pre- or post-suit." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017), *adopted,* No. 2:16-CV-52-JRG-RSP, 2017 WL 1109875 (E.D. Tex. Mar. 24, 2017); *see also Plano Encryption Tech., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032-JRG at 13 (E.D. Tex. Sept. 22, 2017) ("[A]n allegation that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement.").

---

[4] HP cites three out-of-circuit cases for the proposition that a conclusory allegation of willfulness, standing alone and with no factual support, does not meet the *Twombly/Iqbal* pleading standards. (Mtn. at 12-13). *See Varian Med. Sys., Inc. v. Elekta AB*, 2016 WL 3748772, at *8 (D. Del. July 12, 2016); *Continental Circuits LLC v. Intel Corp.*, 2017 WL 2651709, at *7 (D. Ariz. June 16, 2017); *Adidas Am., Inc. v. Sketchers USA, Inc.*, 2017 WL 2543811, at *5 (D. Or. June 12, 2017). HP also cites a pre-*Halo* E.D. Tex. case that *denied* a motion to dismiss willful infringement allegations. (Mtn. at 13) (citing *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427, at *5 (E.D. Tex. Aug. 14, 2015)). As explained above, American Patents has provided more than conclusory or formulaic willfulness allegations.

For these reasons, even if the Complaint contained no pre-suit knowledge allegations, American Patents has stated a claim for willfulness by pleading that the complaint put HP on notice of the patents and that HP's infringement is ongoing. (Dkt. 1 at ¶¶ 21, 33, 45, 57, 68, 84, 100, 103-108). No more is required. *See, e.g.*, *Blitzsafe Texas, LLC v. Volkswagen Grp. of Am., Inc.*, No. 215-CV-1274-JRG-RSP, 2016 WL 4778699, at *7 (E.D. Tex. Aug. 19, 2016) *adopted* No. 2:15-CV-1274-JRG-RSP, 2016 WL 4771291 (E.D. Tex. Sept. 13, 2016) ("The Court also finds the Complaint states a claim to post-suit willful infringement… The Complaint alleged that despite these facts, the [] Defendants have not ceased their infringing activities."); *see also WordCheck Tech, LLC v. Alt-N Techs., Ltd.*, No. 6:10-cv-457, Dkt. 755, at 3 (E.D. Tex. July 17, 2012) (holding that an allegation of notice of the patents-in-suit and that continued infringement would be willful is sufficient at the pleading stage).

HP cites three cases as supporting the proposition that pre-filing knowledge is required to state a claim of willful infringement. (Mtn. at 9-10). But these cases are based on pre-*Halo* reasoning from *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). *See Opticurrent, LLC v. Power Integrations, Inc.*, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016) (relying on *Seagate*); *Bush Seismic Techs. LLC v. Am. Gem Society, Inc.*, 2016 WL 9115381, at *3 (E.D. Tex. Apr. 13, 2016) (pre-*Halo* case relying on *Seagate*); and *Adidas Am., Inc. v. Sketchers USA, Inc.*, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) (relying on *Seagate*). And they are all inconsistent with a core principle from *Halo*: that "[c]ulpability . . . is generally measured against the actor's knowledge at the time of the challenged conduct"—not at some earlier time. 136 S. Ct. at 1926.

D. <u>Even If Pre-Suit Knowledge Is Required, It Was Adequately Alleged Here</u>

*1. American Patents Adequately Alleged HP's Pre-Suit Knowledge of All Patents Based on Willful Blindness*

Even if HP were correct about the law, HP would still lose because American Patents has adequately pleaded pre-suit knowledge for all of the asserted patents (despite HP's incorrect statement that American Patents somehow "concedes that HP had no pre-suit knowledge" for five of the asserted patents). As HP acknowledges in a different section of its Motion, American Patents pleaded that HP had "a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' rights under the patents." (Mtn. at 12). American Patents alleged knowledge in the pre-filing period because it believes that discovery will show that HP affirmatively instructed its employees to avoid reading the patents of others. And American Patents has good reason to believe this: as Professor Mark Lemley has explained, companies like HP are notorious for adopting such policies:

> *Virtually everyone does it*. They do it at all stages of endeavor. Companies and lawyers tell engineers not to read patents in starting their research, lest their knowledge of the patent disadvantage the company by making it a willful infringer. . . . This *intentional ignorance* of patent rights in the hands of others has led some to label major manufacturers in the IT industries "patent pirates."

*See, e.g.*, Ex. 1 at 21-22 [M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008)] (emphasis added).[5] That is sufficient at the pleading stage. *See* Fed. R. Civ. P. 11(b)(3)

---

[5] *See also* Edwin H. Taylor & Glenn E. Von Tersch, *A Proposal to Shore Up the Foundations of Patent Law that the Underwater Line Eroded*, 20 Hastings Comm. & Ent. L.J. 721, 737 (1998) ("As matters now stand many companies discourage employees from reading patents. This presumably lessens the chance that the company will be found to have knowledge of a patent."); Dennis Fernandez, *Move Over Letterman: Top 10 Most Common IP Management Mistakes for New Companies*, Pat. Strategy & Mgmt., July 1, 2003, at 3 ("Additionally, in many cases it may be appropriate for companies, as a matter of policy, to discourage looking at issued patents owned by other entities so as to avoid awareness of potentially infringing patents."); Mark A. Lemley & Ragesh K. Tangri, *Ending Patent Law's Willfulness Game*, 18 Berkeley

(allowing allegations of fact on information and belief if they "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"); *see also Blitzsafe Texas*, 2016 WL 4778699, at *6 (discussing applicability of willful blindness to allegations of pre-suit willful infringement).

### 2. American Patents Adequately Alleged HP's Actual Pre-Suit Knowledge of the '049 Patent and the '626 Patent

As for the '049 Patent and the '626 Patent, American Patents provides a second set of allegations of pre-suit knowledge by identifying five specific employees (Patrick Ferguson, who worked for Compaq and currently works for HP, Irene Kosturakis, Guy J. Kelley, David M. Hoffman, and Russell C. Scott, all of whom have worked as in-house counsel for HP) involved in the prosecution of a patent application initially assigned to Compaq Information Technologies Group, L.P. and presently assigned to HP. (Dkt. 1 at ¶¶ 84, 100). American Patents specifically alleged that those five people have had knowledge of the '049 Patent and the '626 Patent at least as of February 1, 2005. *Id*.

HP presents four arguments that American Patents' basis for actual pre-suit knowledge as to the '049 Patent and the '626 Patent is somehow improper. All four arguments are wrong.

First, HP argues that the Complaint does not "allege that HP somehow obtained indirect knowledge of those patents as a result of its acquisition of Compaq Computer Corp." (Mtn. at

---

Tech. L.J. 1085, 1100-01 (2003) ("[I]n-house patent counsel and many outside lawyers regularly advise their clients not to read patents if there is any way to avoid it. What you do know will certainly harm you, they reason, so it is generally better not to know. Thus, from the perspective of a potential infringer, ignorance is bliss."); Timothy B. Lee, *It's Normal for Software Companies to Ignore Patents*, Forbes Contributor post (2/27/2012) ("[A]lmost all software companies ignore their competitor's patents."); Tom Krazit, "*Why Tech Companies Want Engineers To Ignore Patents When Designing Products*," Gigaom, Nov. 2, 2011 ("[S]everal companies in the tech industry *actively discourage* their engineers from thinking about whether concepts and products under development might have already been patented . . . .") (emphasis added).

12

10-11). Whether HP obtained "indirect" knowledge of the two patents through acquiring Compaq is irrelevant since the Complaint alleges that HP obtained knowledge through the knowledge of the five identified HP employees. And in any case, knowledge acquired through the prosecution of a patent owned by a defendant's predecessor can plausibly support allegations concerning the knowledge of the defendant itself. *See Cloud Farm Assocs. V. Volkswagen Group of Am., Inc.*, No. 10-502-LPS, 2012 WL 3069390, at *3-4 (D. Del. July 27, 2012) (denying motion to dismiss willfulness allegations where complaint alleged that "the USPTO listed the [asserted patent] as a cited reference" "as part of an office action for" a patent of a predecessor to the defendant).

Second, HP argues that "the '626 Patent was one of more than 30 references cited by the examiner during the prosecution of an abandoned application approximately eight years before the release of HP's Chromebooks." (Mtn. at 11). Here, HP is not addressing the *plausibility* of American Patents' willfulness allegations, but instead is attacking the *probability* of those allegations, which is not the correct standard for a motion to dismiss. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("[defendant] is essentially arguing that, at the pleading stage, [plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable. But that is not what is required.")

Third, HP argues that the Complaint "offers no plausible basis for alleging that the examiner's citation to the '626 patent would have provided knowledge of the '049 patent." (Mtn. at 11). The Complaint alleges that the '626 Patent "states on its face that it is a division of the application leading to the '049 Patent." (Dkt. 1 at ¶ 84). In other words, looking at the face of the '626 Patent would put the reader on notice of the related '049 Patent, and it is certainly

plausible that those involved in the prosecution of the Compaq/HP application would have looked at the face of the '626 Patent.

Fourth, HP argues that the Complaint "does not allege that the '049 patent was ever cited by HP or Compaq" and "does not allege that anyone at Compaq or HP ever argued patentability over either asserted patent, or did anything else reflecting either company's knowledge of the asserted patents." (Mtn. at 11). But HP need not have cited these patents itself to plausibly have knowledge of them. Rather, "[c]itation *by the PTO* during prosecution of an eventually issued patent is sufficient to show knowledge at the pleading stage." *Titanide Ventures, LLC v. Int'l Bus. Machines Corp.*, No. 4:12-cv-196-RC-ALM, 2012 WL 5507327 at *3 (E.D. Tex. Oct. 18, 2012) (emphasis added), *adopted*, 2012 WL 5507316 (E.D. Tex. Nov. 14, 2012).

HP does not cite this Court's decision in *Titanide Ventures*. Instead, HP cites two Delaware cases for the proposition that an *examiner's* citation of an asserted patent did not provide sufficient knowledge of the patent for pleading willfulness. (Mtn. at 11) (citing *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-cv-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012) and *Spherix Inc. v. Juniper Networks, Inc.*, No. 14-cv-578-SLR, 2015 WL 1517508, at *3 (D. Del. Mar. 31, 2015)). But neither of the complaints in those cases contained allegations that *specific employees* had knowledge of the asserted patents, as American Patents asserts in this case. Instead, the *Chalumeau* complaint (Ex. 2, Chalumeau First Amended Complaint at ¶ 9) and the *Spherix* complaint (Ex. 3, Spherix First Amended Complaint at ¶ 44) alleged only that the asserted patents were cited in patent office proceedings, not that any particular employees of the defendants in those two cases gained knowledge of the asserted patents.

14

## VI. IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

To the extent that the Court rules that any of American Patents' claims are not adequately pleaded, American Patents requests an opportunity to amend its complaint to address any deficiencies that the Court finds, or, at a minimum, to incorporate its P.R. 3-1 infringement contentions by reference once those are submitted. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH,* 839 F.3d 422, 428 (5th Cir. 2016) (finding an abuse of discretion for the district court's failure to grant leave to amend and explaining "the language of this rule evinces a bias in favor of granting leave to amend, and "[a] district court must possess a substantial reason to deny a request.") (citations and internal quotations omitted). "[T]he Rule 'evinces a bias in favor of granting leave to amend.'" *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x 205, 208 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.*

## VII. CONCLUSION

For the foregoing reasons, the Court should deny HP's Motion.

Dated: January 14, 2019      Respectfully submitted,

/s/ *Zachariah S. Harrington*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com

15

Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
The People's Petroleum Building
102 N College Ave., 13th Floor
Tyler, Texas 75702
(903) 593-7000

*Attorneys for American Patents LLC*