# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| AMERICAN PATENTS LLC, | CIVIL ACTION NO. 4:18-cv-700-ALM |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| HP INC., | |
| Defendant. | |

## AMERICAN PATENTS' SUR-REPLY TO HP'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

I.     **AMERICAN PATENTS SUFFICIENTLY PLEADED DIRECT AND INDIRECT INFRINGEMENT**

In its reply, HP rehashes arguments from its motion that either directly contradict the complaint or read it in the way least favorable to American Patents. (Reply at 1-4). Either way, that is exactly the opposite of what the law requires.

For example, HP says that American Patents only "bases its infringement allegations on third-party and unbranded products." (Reply at 1). But HP ignores the HP Chromebooks that the complaint specifically names and pictures. (Opp'n. at 3). HP also says that the Complaint "alleges that Google Chromecast devices—not HP products—practice the asserted claim limitations." (Reply at 2). But HP does not begin to explain how that is a rational reading of a Complaint that includes pictures of accused HP Chromebooks, and expressly calls them accused products. And HP also says that even "accepting as true APL's allegations that Chromecast devices and unbranded Chromebooks practice the claimed inventions," that American Patents' claims fail. (Reply at 2). But if that is true, then how is it implausible that the named and pictured HP Chromebooks do so as well?

HP goes even farther, though: it argues that American Patents has pleaded itself out of court. HP claims that American Patents' "own allegations—which must be accepted as true—defeat any assertion that HP" directly infringes the "'655, '090, '049, and '626 patents." (Reply at 2). What allegations? HP fails to identify anything from the Complaint that, read in the light most favorable to American Patents, prevents a finding that HP infringed the asserted patents.

The most explicit argument HP makes here is its claim that the accused HP products simply cannot be used with Chromecast devices. In its motion, HP claimed that the complaint's allegations establish that "Google Chromecast devices cannot be used with HP's Chromebook computers."  (Mtn. at 5-6). But HP's only support for that claim was a statement from a Google website that did not even mention the term Chromebook. So it was certainly a permissible

1

inference on a motion to dismiss to read the referenced website as referring to more conventional computers running, e.g., Windows—not Chromebooks running an operating system created by the same company (Google) that originated Chromecast devices. And American Patents explained as much in its opposition. To further confirm that this was the proper inference, American Patents included a link from a related Google page showing that Chromebooks can be used with Chromecast devices. (Opp'n at 5).

On reply, HP evades the meat of this issue entirely, and simply reiterates that the website was cited in the complaint. Nor does HP deny in its reply that the accused HP Chromebooks are "specifically designed to work with and stream to Google Chromecast devices (or televisions with built-in Chromecast)." All of the other comments going to direct infringement that HP attacks as being outside of the complaint (Reply at 4) were offered only to rebut HP's unsupported denials and mischaracterizations of the complaint's allegations. And HP does not deny the truth of any of them. So what is it that HP really hopes to accomplish here?

HP's motion represents the kind of make-work filing that—especially in light of early, court-ordered infringement contentions—this Court has previously bemoaned. Under the Court's proposed schedule for this case, mandatory infringement contentions under the patent local rules will be due by default next month. And "[g]iven the typical result" of even a successful Rule 12(b)(6) motion of this type—leave to file an amended complaint—"[i]n reality, [HP]'s motion could accomplish very little." *Panoptis Patent Mgmt., LLC v. Blackberry Corp.*, 216CV00059JRGRSP, 2017 WL 780885, at *4 (E.D. Tex. Feb. 10, 2017). When, as here, the complaint contains enough detail to "avoid the risk that [plaintiff's] case will surprisingly balloon" and when infringement contentions will likely be served by the time the motion is decided, this Court has expressed skepticism about the benefit of such motions:

> In sum, because infringement contentions are provided early in a patent infringement case, parties should seriously question whether it is worth expending

> resources challenging the sufficiency of a complaint as detailed as [Plaintiff's]. There may be cases in which real prejudice has resulted from a defendant's lack of notice (beyond the reality that in every case, the plaintiff has a head-start). But in most cases, the result will be a command to the Plaintiff to amend. *If that command comes after the plaintiff has served infringement contentions, a defendant gains nothing beyond whatever nuisance the motion creates for the plaintiff.*

*Id.* (denying motion to dismiss direct, indirect, and willful infringement allegations) (emphasis added). This Court should similarly deny HP's motion.[1]

## II. AMERICAN PATENTS SUFFICIENTLY PLEADED WILLFULNESS

In its reply, HP makes three arguments attacking the willfulness allegations against it generally, and one argument going to only to those allegations based on post-filing knowledge. All of them should be rejected.

### A. Egregious Conduct Is Not Required to Plead Willfulness

HP re-asserts its position that egregious conduct is a required element of a willfulness claim. (Reply at 5). HP ignores, however, this Court's decision concluding that Federal Circuit precedent forecloses HP's misreading of *Halo*. Opp'n at 7-9; *Ericsson Inc. v. TCL Communication Tech. Holdings, Ltd.*, 2018 WL 2149736, at *8 (E.D. Tex. 2018) (citing *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017)). Nor is this Court alone in that conclusion, especially in cases decided after *Arctic Cat*. *See, e.g., Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018) ("This Court sides with those decisions that do not require allegations of egregiousness at the pleading

---

[1] HP confines its indirect infringement arguments on reply to a single footnote. (Reply at 2 n. 1). HP continues to attack American Patents' indirect infringement allegations solely based on the flaws that HP contends exist in American Patents' direct infringement allegations. And that argument remains fundamentally flawed, at least because HP's motion rests on a theory that the direct infringement allegations involve hardware that HP claims not to sell or use. Even if true (or even relevant on a motion to dismiss), HP's denials about its own direct infringement say nothing about what hardware HP's customers might use, in combination with HP products or otherwise, to directly infringe.

stage."); *Valinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *6 (D. Del. May 29, 2018) (finding that "'egregiousness' should not be a part of the calculus for determining whether a patentee has set out a plausible claim of willful infringement").

These cases confirm that the test for pleading willful infringement post-*Halo* has nothing to do with egregious conduct:

> For willful infringement, then, a plaintiff need (only) plausibly allege that the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.

*Align Tech.*, 339 F. Supp. 3d at 449 (internal quotes omitted). HP does not deny that American Patents' willfulness allegations satisfy each of those elements—none of which have anything to do with the egregiousness of the alleged conduct.

    B.    <u>American Patents Appropriately Cited Publications in Response to HP's "Conspiracy Theory" Claims</u>

HP next argues that, because the series of publications that American Patents cited in response to HP's attack on its willful blindness allegations are outside of the pleadings, they are irrelevant. Reply at 1. But HP forgets how we got here. A core part of HP's attack on the willfulness allegations had nothing to do with an argument that they were conclusory in the relevant sense: i.e., purely a restatement of the legal elements. Rather, HP called these factual allegations a wildly unbelievable "conspiracy theory." (Mtn. at 12). So, appropriately, American Patents' opposition showed publication after publication confirming that HP's alleged behavior was endemic to the tech industry—something "virtually everyone does." Ex. 1 at 21-22; Opp'n at 11 & n. 5 (collecting articles). HP's reply is not to rebut the truth of the articles, but to protest that they are improper evidence at this stage.

American Patents cited those documents because the true thrust of HP's attack was not under Rule 12(b)(6): HP effectively argued that plaintiff's willfulness allegations were fabricated

4

from whole cloth, without any real-world foundation. As demonstrated by the numerous publications cited in its opposition, though, American Patents has very good reason to believe that HP—as a large tech company—has a policy or practice of not reviewing others' patents, including taking the affirmative act of instructing its employees to not review others' patents.

Obviously, American Patents has not had an opportunity to review HP's internal company policies or depose any of its employees. Indeed, it is unclear how American Patents could ethically acquire the evidence HP seems to demand at this stage in the proceedings. If, after discovery, American Patents is unable to prove these allegations, then HP will have the opportunity to move for summary judgment on this issue.

But based on the information currently available, American Patents easily has a good-faith belief that discovery will likely reveal this allegation to have evidentiary support. Opp'n. at 11; *see also* Rule 11(b)(3) (authorizing pleading on information and belief if allegations "will likely have evidentiary support after reasonable opportunity for further investigation or discovery"); *Script Security Solns. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 938 (E.D. Tex. 2016) (Bryson, J., by designation) (finding that similar allegations sufficiently pleaded willful blindness for inducement claim). No more is needed at this point.

C. <u>No Good Policy Reason Supports Dismissing These Allegations</u>

Finally, HP makes a few policy-based arguments to support its position. All of them lack merit. HP says, for example, that "APL's assertion that every patentee has a plausible willful infringement claim simply by filing a complaint is contrary to the 'egregious misconduct' standard . . . ." (Reply at 5). But as shown above and in the opposition, egregious conduct is a consideration for damages enhancement, not an element of willful infringement.

HP also says that American Patents' standard is one "in which every infringer becomes a willful infringer." (Reply at 1). That simply is untrue. At trial, the jury will be charged with

determining, among other things, whether HP knew or should have known that its activities after it learned of the patents were infringing. *See Artic Cat*, 876 F.3d at 1371. To rebut willfulness, HP could introduce properly disclosed evidence of a non-infringement opinion or other proof that HP had reason to believe that it did not infringe, despite being aware of the patents. And a determination about willfulness does not have to wait until trial; defendants have won summary judgment of no willful infringement post-*Halo*. But nothing about the potential discovery or development of exculpatory evidence about HP's intent *in the future* has anything to do with whether American Patents has stated a claim *now*. Nor should it.

HP's position boils down to a protest that, because it is widely known in the industry that virtually all major technology manufacturers have a policy of being willfully blind to patents, it is somehow unfair that these companies could all be subject to an allegation of willful blindness. HP appears to believe that, because virtually everyone does it, nobody can be held accountable. HP offers no support for its "strength in numbers" theory, or any reason why this Court should categorically exempt large tech companies like it from allegations of willful blindness.

      D.    <u>Federal Circuit Precedent Confirms That Willfulness Can Be Based on Post-Filing Conduct</u>

HP also incorrectly reasserts its argument that willfulness cannot be based on allegations of only post-filing knowledge.[2] (Reply at 5). HP rests its position on *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-cv-00325-JRG, 2016 WL 9275395, at *2 (E.D. Tex. Oct. 19, 2016) ("In the absence of a preliminary injunction, however, a plaintiff may not recover enhanced damages under a theory of willfulness solely for post-filing conduct.").

Although *Opticurrent* issued shortly after *Halo*, HP's reliance on it remains misplaced for at least two reasons. First, unlike American Patents here, the defendant in *Opticurrent* did not

---

[2] This argument is only relevant if the Court concludes that American Patents' allegations concerning pre-suit willful blindness are insufficient.

assert that it made little practical sense to move for an injunction because it was a non-practicing entity.  *See* Case No. 2:16-cv-325, Dkt. No. 17, Opp. Br. (E.D. Tex. June 17, 2016).  Second, *Opticurrent* is no longer good law on this point after the Federal Circuit's 2017 decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017).  There, the Circuit reversed a district court ruling that the patentee "could not assert willful infringement because it did not seek a preliminary injunction," explaining that "there is no rigid rule that a patentee must seek a preliminary injunction in order to seek enhanced damages."  *Id.* at 1295-96 (internal quotes omitted); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1026 (N.D. Cal. 2017) ("The *Mentor Graphics* court noted that after the United States Supreme Court's decision in *Halo*, rigid rules surrounding the award of enhanced damages are inappropriate.").  So even if American Patents had only alleged willfulness based on post-filing conduct, its allegations would still be allowed to stand.

### III. CONCLUSION

For the foregoing reasons, the Court should deny HP's Motion.

Dated: February 11, 2019                                        Respectfully submitted,

/s/ *Larry D. Thompson, Jr.*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
Michael D. Ellis
Texas Bar No. 24081586
michael@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
The People's Petroleum Building
102 N College Ave., 13th Floor
Tyler, Texas 75702
(903) 593-7000

*Attorneys for American Patents LLC*